```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
```

| | |
|---|---|
| JOSE SANTOS MAURICIO RAMIREZ, | |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| -against- | 18-cv-296 (ST) |
| ROKA JAPANESE FOOD, INC., et al., | |
| Defendants. | |

```
---------------------------------------------------------X
```
**TISCIONE, United States Magistrate Judge:**

This opinion sets forth the Court's findings of fact and conclusions of law in this case, pursuant to Federal Rule of Civil Procedure 52, following a one-day nonjury trial. The Court awards Plaintiff damages, fees, and costs in the amounts described herein.

## PROCEDURAL BACKGROUND

In this case, Plaintiff Jose Santos Mauricio Ramirez ("Plaintiff" or "Mr. Ramirez") seeks damages for Defendants' failure to pay him overtime wages and provide him wage notices and statements as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"). Plaintiff named three Defendants in his complaint: Roka Japanese Food Inc. d/b/a Tomo Japanese Cafe ("Roka"), Dian Chi Zhou a/k/a Larry Zhou ("Mr. Zhou"), and Mei Lin a/k/a Joyce Lin ("Ms. Lin"). *See* Compl. at 1. Mr. Zhou never appeared in this action, and the Clerk of Court entered a certificate of default against him at Plaintiff's request. *See* ECF Nos. 36, 38. However, Plaintiff later indicated that he would not seek a default judgment against Mr. Zhou, *see* ECF No. 43, and voluntarily dismissed the action against him pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), *see* ECF No. 45.

The Court conducted a bench trial of Plaintiff's claims against Defendants Mei Lin and Roka Japanese Food, Inc. (collectively, "Defendants") on November 5, 2018. *See* Minute Entry, ECF No. 39. At the conclusion of the trial, the Court made the preliminary finding that Plaintiff had proven, by a preponderance of the evidence, that Defendants failed to pay Plaintiff required overtime wages and failed to provide him required wage notices and statements. Trial Transcript 116:17-119:3, ECF No. 40.

At the end of the trial, the Court directed Plaintiff and Defendants to file proposed findings of fact and conclusions of law, including proposed damages calculations and Plaintiff's request for attorney's fees and costs. Trial Tr. 119:4-120:14. Albeit late, both parties filed briefs. *See* Pl.'s Proposed Findings of Fact and Conclusions of Law ("Pl.'s Prop. Findings"), ECF No. 42; Defs.' Prop. Findings, ECF No. 48. The Court has reviewed these submissions, the facts and law stipulated to by the parties, and the evidence adduced at trial in reaching the determinations entered below.

## FINDINGS OF FACT

Only two witnesses testified at trial: Mr. Ramirez and Ms. Lin. Over the course of the trial, it became apparent that there was no dispute between these two witnesses as to many of the central facts of the case.

<u>Plaintiff's Employment by Defendants</u>

The Court finds that Ms. Lin employed Plaintiff at Roka, d/b/a Tomo Japanese Cafe, located at 89-14 Queens Boulevard, Elmhurst, New York 11373. Mr. Ramirez testified that his

main obligation at the cafe was to wash dishes, but that he also cleaned the restaurant, made various repairs, and prepared certain foods. Ramirez: 56:25-57:13.[1]

Ms. Lin referred to Mr. Ramirez either as her employee or the employee of the restaurant at multiple points during her testimony. Lin: 28:21-24; 43:4-8; 44:4-12; 45:3-8; 81:21-22. She acknowledged that she set Mr. Ramirez's work schedule, Lin: 32:21-23, determined his salary, Lin: 32:24-25, and personally paid him his wages, Lin: 40:1-3. Defendants also admit that Ms. Lin "owns and maintains control, oversight, and the direction of Tomo Japanese Cafe." *See* Compl. ¶ 15; Answer, ECF No. 10 ¶ 15.

Dates of Plaintiff's Employment

While there is no dispute between the parties that both Roka and Ms. Lin acted as Plaintiff's employers, the parties do dispute the period during which these Defendants employed Plaintiff. Defendants maintain that neither Roka nor Ms. Lin acted as Plaintiff's employer until August 2012, at which time Ms. Lin both took ownership of the restaurant and began serving as Plaintiff's supervisor. Defs.' Prop. Findings at 2. Plaintiff suggests that Roka and Ms. Lin employed Plaintiff beginning no later than January 2012. *See* Calculation of Damages Table, Pl.'s Ex. A, ECF No. 42-2 at 3.

Mr. Ramirez testified that he worked at Tomo Japanese Cafe from November 25, 2006 to October 12, 2017, without interruption, Ramirez: 56:20-21, 74:23-25, which Ms. Lin does not dispute, Lin: 81:23-24. It does not follow, however, that the *named Defendants* in this case employed Mr. Ramirez during this entire period.

---

[1] When citing the testimony of the witnesses at trial, the Court will write the surname of the witness followed by the page and line numbers of the Trial Transcript that contain the testimony.

As to the date that Ms. Lin began acting as Plaintiff's employer, the Court agrees with Defendants. Ms. Lin testified that she became the owner of Roka (d/b/a Tomo Japanese Cafe) and Mr. Ramirez's employer at some time in August 2012. Lin: 15:23-25. Plaintiff offered no evidence to contradict this date. Mr. Ramirez testified only that he "noticed that [Ms. Lin] assumed control" of the restaurant and began acting as his boss at some time in 2012. Ramirez: 72:12-21. The Court credits the uncontradicted testimony given by Ms. Lin. Although the exact date that Ms. Lin became the owner of Roka and Mr. Ramirez's employer was not adduced at trial, Defendants suggest that Ms. Lin became the owner of Roka and the employer of Mr. Ramirez on August 1, 2012. Defs.' Prop. Findings at 2. The Court accordingly finds that Ms. Lin employed Plaintiff from August 1, 2012 to October 12, 2017.

Defendants also argue that the corporate defendant, Roka, did not act as Plaintiff's employer until August 1, 2012, when Ms. Lin became owner of the restaurant. Defs.' Prop. Findings at 2. The Court likewise agrees. Mr. Ramirez testified that he worked at Tomo Japanese Cafe as early as 2006, but admitted that he knew nothing about the corporate identity of the restaurant, so could not attest to the period of time during which he was employed by Roka as a corporate entity. Ramirez: 71:6-17. Plaintiff submitted into evidence the New York State Department of State Division of Corporations Entity Information page for Roka Japanese Food, Inc. Pl.'s Trial Ex. 6 ("Roka's EI Page"); *see* Trial Tr. 7:1-2. Roka's EI Page reflects that Roka was initially incorporated on November 8, 2011 and that the current address of its Principal Executive Office is the address of Tomo Japanese Cafe (89-14 Queens Blvd., Elmhurst, NY 11373). However, while this document reflects that Roka is *currently* headquartered at this address, Plaintiff has not demonstrated that Roka was located at this address during the disputed period of January 2012 to July 2012. Though Plaintiff worked at Tomo Japanese Cafe during this

period, absent any evidence that Defendant Roka (the corporate entity) actually operated Tomo Japanese Cafe (the business) during this period, the Court finds that Roka, like Ms. Lin, only employed Mr. Ramirez between August 1, 2012 and October 12, 2017.

Notice and Records of Wages Paid to Plaintiff

The Court repeats its finding announced at trial, Trial Tr. 118:3-10, that Defendants provided Plaintiff no written notice of his wages or terms of employment. Ms. Lin, at one point, when asked whether she provided Mr. Ramirez with any written document describing his overtime rate of pay, testified that she provided Mr. Ramirez a "payroll document" in 2012. Lin: 33:8-22. Ms. Lin, however, did not describe the contents of this document with any specificity, nor have Defendants produced this document.

The Court also repeats its finding that Defendants created no reliable records of the wages paid to Mr. Ramirez. Trial Tr. 116:24-117:6. Some of Plaintiff's purported pay stubs were furnished to the Court (Trial Ex. A), but these records (a) spanned only a short period of Mr. Ramirez's employment by Defendants, (b) contained obvious arithmetic errors, and (c) did not, as admitted by Ms. Lin, Lin: 42:11-20, actually record the number of hours Plaintiff worked.

The Court does not find credible or rely on the records produced by Defendants. In the absence of any reliable records of Plaintiff's employment, the Court notes the axiom that if the employee "produces sufficient evidence to show the amount and extent of that work [he performed] as a matter of just and reasonable inference[, t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also Pest v. Bridal Works of New York, Inc.*, 268 F. Supp. 3d 413,

422 (E.D.N.Y. 2017) (noting that the same burden-shifting framework applies under the New York Labor Law).

Hours Worked by Plaintiff

Plaintiff testified that he worked at the restaurant from 11:30 AM to 11:30 PM on Tuesday through Thursday, from 11:30 AM to 12:00 AM on Friday and Saturday, and from 12:30 PM to 11:00 PM on Sunday. Ramirez: 58:16-20. Plaintiff also testified that he had one hour per day allotted for breaks, along with an additional 20 minutes per day to eat meals. Ramirez: 58:21-25. The Court finds Plaintiff's testimony on this matter credible.

Ms. Lin acknowledged that Mr. Ramirez worked six days per week, Lin: 30:5-7, but testified somewhat inconsistently as to the lengths of time he worked. She first testified that his shift usually ended at 10:00 PM on weekdays and 11:00 PM on weekends, Lin: 31:6-8, but acknowledged that he sometimes stayed later if the restaurant was busy, sometimes until the restaurant closed, Lin: 32:16-20. When Plaintiff's attorney confronted Ms. Lin with records produced by Defendants seemingly indicating that Mr. Ramirez left the restaurant at the same time every night, Ms. Lin acknowledged that those records did not record the actual times of day that Mr. Ramirez stopped working. Lin: 41:9-21.

Given that Defendants produced no reliable records of the hours Plaintiff worked and that Ms. Lin did not provide clear and consistent testimony as to the same, the Court finds that Plaintiff worked the days and hours to which he testified, which total 63.5 hours per week.[2]

---

[2] In their post-trial submissions, both Plaintiff and Defendants suggest that Plaintiff worked 65.5 hours per week. Pl.'s Ex. A, ECF No. 42-2 at 18; Defs.' Prop. Findings at 3. This calculation does not account for the daily 20-minute meal breaks that Mr. Ramirez testified he received. Accounting for six of these breaks per week, this reduces the total number of hours per week to 63.5.

Wages Paid to Plaintiff

There is no dispute between the parties as to the wages paid to Plaintiff. Mr. Ramirez testified that he was paid a fixed amount once every 15 days, i.e. twice per month—$1,100 in 2012, $1,150 in 2013, $1,200 in 2014, $1,250 in 2015, and $1,300 in 2016 and 2017. Ramirez: 62:13-21. Ms. Lin acknowledged at multiple points during her testimony that she paid Plaintiff a fixed amount that did not take into account the number of hours Plaintiff worked during the relevant pay period. Lin: 50:24-51:2; 54:25-55:3; 84:22-85:3; 86:14-18. Ms. Lin testified inconsistently about the specific amounts she paid Plaintiff, but ultimately averred that she paid Plaintiff the amounts to which he testified. Lin: 81:25-82:1-3.

The Court finds that Plaintiff was paid wages in the following amounts twice per month—$1,100 in 2012, $1,150 in 2013, $1,200 in 2014, $1,250 in 2015, and $1,300 in 2016 and 2017.

## CONCLUSIONS OF LAW

Plaintiff pursued each of the causes of action listed in his complaint at trial, namely:

I. Violation of the overtime wage provisions of the FLSA.

II. Violation of the overtime wage provisions of the NYLL and accompanying regulations.

III. Failure to provide annual wage notices under the NYLL.

IV. Failure to provide wage statements under the NYLL.

**A. Plaintiff's Employment Is Not Covered by the FLSA**

"The FLSA and the NYLL both 'guarantee[ ] compensation for all work . . . engaged in by [covered] employees.'" *Salinas* v. *Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015) (quoting *Kuebel* v. *Black & Decker Inc.,* 643 F.3d 352, 359 (2d Cir. 2011)). "To establish liability on a claim for underpayment of wages, 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of

that work.'" *Id.* (quoting *Kuebel,* 643 F.3d at 361); *see also Tapia* v. *Blch 3rd Ave. LLC*, No. 14-CV-8529 (AJN), 2016 WL 4581341, at *4 (S.D.N.Y. Sept. 1, 2016) (observing that under the FLSA and the NYLL, "[p]laintiffs bear the burden of proof to establish all claims and damages by a preponderance of the evidence").

An employee is covered by the minimum wage and overtime provisions of the FLSA only if he or she, in any workweek, is: (i) "engaged in commerce or in the production of goods for commerce;" or (ii) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1); *see, e.g.*, *Quintero* v. *Anjudiromi Constr. Corp.*, No. 16-CV-8781 (RWS), 2018 WL 1027716, at *2 (S.D.N.Y. Feb. 21, 2018). "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively." *Jacobs* v. *N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009). Plaintiff bears the burden of proof to establish one or the other form of coverage. *Ethelberth* v. *Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (collecting cases).

To establish enterprise coverage, the plaintiff must demonstrate that he was employed by an enterprise in which "(1) employees engaged in commerce or in the production of goods for commerce, or employees handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce by any person, and (2) [that] has no less than $500,000 in annual gross volume of sales made or business done." *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010) (quoting 29 U.S.C. § 203(s)(1)(A)).

Plaintiff presented no evidence that Roka has annual revenues equal to or exceeding $500,000. Therefore, Plaintiff has not met his burden to establish eligibility for relief under the FLSA through enterprise coverage.

To establish individual coverage, the employee himself, rather than the enterprise, must be engaged in interstate commerce by virtue of his position. "An employee is 'engaged in commerce' under the meaning of the statute if 'the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.'" *Jiao v. Shi Ya Chen*, No. 03-CV-165 (DF), 2007 WL 4944767, at *8 (S.D.N.Y. Mar. 30, 2007) (quoting *Mitchell v. C.W. Vollmer & Co.,* 349 U.S. 427, 429 (1955)). "So, handlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not." *McCleod v. Threlkeld,* 319 U.S. 491, 494 (1943).

The job duties that Plaintiff attested to—washing dishes, cleaning, repairs, and preparation of food—are insufficient to establish individual coverage under the FLSA.

Because Plaintiff has not demonstrated facts sufficient to establish either enterprise coverage or individual coverage, the Court denies Plaintiff's claim for recovery of unpaid overtime wages under the FLSA.

**B. The Court Retains Supplemental Jurisdiction over Plaintiff's NYLL Claims**

Under 28 U.S.C. § 1367, in any civil action in which a district court has original jurisdiction, it "shall" also, with limited exceptions, "have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "A court 'may decline to exercise supplemental jurisdiction,' however, if, among other factors . . . 'the district court has dismissed all claims over which it has original jurisdiction.'" *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (quoting 28 U.S.C. § 1367(c)). Given the Court's disposition of

Plaintiff's FLSA claim, it considers now whether it should continue to exercise supplemental jurisdiction over Plaintiff's state law claims.[3]

Where all of the federal claims in an action have been dismissed, a court must consider whether continuing to exercise supplemental jurisdiction over any remaining state law claims "serves the interests of economy, convenience, fairness and comity." *Bray* v. *City of New York*, 356 F. Supp. 2d 277, 285 (S.D.N.Y. 2004) (citing *Itar-Tass Russian News Agency* v. *Russian Kurier, Inc.*, 140 F.3d 442, 446-47 (2d Cir. 1998)); *see generally Chapman* v. *Crane Co.*, 694 Fed. Appx. 825, 828 (2d Cir. 2017) (summary order). Generally, if a court dismisses before trial all of the claims over which it has original jurisdiction, the balance of these factors will weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims. *See Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 n.7 (1988)). Conversely, declining to exercise supplemental jurisdiction may disserve the relevant interests "when the dismissal of the federal claim occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims." *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (internal quotation marks and citation omitted). For that reason, there is a "particularly strong case for retaining jurisdiction . . . [after a court] has not only spent considerable time dealing with the legal issues and becoming fully conversant with the facts but also has conducted a trial on the merits." *Id.* (internal quotation marks and citation omitted); *accord Short* v. *Manhattan Apartments, Inc.*, 916 F. Supp. 2d 375, 394 (S.D.N.Y. 2012) (collecting cases).

---

[3] Failure to establish that the plaintiff's employment is covered by the FLSA is an element of the statute rather than a jurisdictional requirement. *See Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 300 (E.D.N.Y. 2009). Therefore, the Court is not precluded from exercising supplemental jurisdiction for lack of original jurisdiction.

Applying the factors of judicial economy, convenience, fairness, and comity, this Court concludes that Plaintiff's NYLL claims should not be dismissed on jurisdictional grounds at this late stage of the litigation. These claims involve a straightforward application of the NYLL's overtime, wage notice, and wage statement provisions, rather than novel or complex issues of state law that would implicate concerns about comity. *Cf. Chenensky* v. *N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 395 (S.D.N.Y. 2013) ("Here, the relationship between the state and federal claims, the nature of the state law claims, and the pending companion case in state court all favor declining jurisdiction. No federal claims remain in this case. And the remaining claims raise novel and complex issues of state law."). Moreover, given that this Court has already conducted a trial on the merits, the factors of convenience and judicial economy weigh strongly in favor of this Court's continued exercise of supplemental jurisdiction. *See, e.g.*, *Marcelino v. 374 Food, Inc.*, No. 16-CV-6287 (KPF), 2018 WL 1517205, at *11 (S.D.N.Y. Mar. 27, 2018). Accordingly, this Court will decide Plaintiff's pendent state law claims.

## C. Mei Lin and Roka Both Qualify as Plaintiff's Employers Under the NYLL

The NYLL defines the term "employer" broadly for purposes of determining those who bear liability for unpaid wages. *See* N.Y. Lab. Law §§ 2(6) (in definitions to Article 1: Short Title and Definitions: "'Employer' means the person employing any such . . . laborer, whether the owner, proprietor, agent, superintendent, foreman or other subordinate."), 190(3) (in definitions to Article 6: Payment of Wages: "'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). The "overarching concern" in determining whether a given defendant employed the plaintiff is "'whether the alleged employer possessed the power to control the workers in

question.'" *Yu Y. Ho* v. *Sim Enters., Inc.*, No. 11-CV-2855 (PKC), 2014 WL 1998237, at *11 (S.D.N.Y. May 14, 2014) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013)).

The parties' stipulated facts and the undisputed testimony adduced at trial clearly reflect that Roka and Ms. Lin each acted as Plaintiff's employer. Defendants do not dispute this point in their post-trial submissions. Defs.' Prop. Findings at 2. The Court finds, however, based on the facts adduced at trial and discussed above that both Roka and Ms. Lin only began acting as Mr. Ramirez's employer within the meaning of the NYLL as of August 1, 2012.

Thus, Plaintiff can only recover damages on his claims under the NYLL that arose between August 1, 2012 and October 12, 2017, the dates Plaintiff was employed by Defendants.[4]

## D. Defendants Are Liable for the Violations of the NYLL Alleged by Plaintiffs

### **Overtime Wages**

Under the NYLL, an employee must be paid at the rate of one and one-half times the employee's regular hourly rate for each hour the employee works in excess of 40 hours in a given workweek. 12 N.Y.C.R.R. § 146-1.4. Overtime pay under the NYLL is calculated by applying a multiplier of one and one half to an employee's regular rate of pay. *Id.*

In this case, Plaintiff regularly worked more than 40 hours per week, but was paid a fixed amount twice per month regardless of his actual schedule. The Court must decide whether or not this fixed rate was intended to include overtime compensation at the premium rate of one and one half times Mr. Ramirez's regular rate of pay.

---

[4] The statute of limitations for claims brought under the NYLL is six (6) years. *See* N.Y. Lab. Law. §§ 198(3), 663(3)). Accordingly, the limitations period applicable to Plaintiff's NYLL claims begins January 16, 2012. *See* Compl. at 1. The statute of limitations is thus irrelevant, because Plaintiff was only employed by Defendants beginning after this date, namely as of August 1, 2012.

It is permissible for an employer and employee to stipulate to a weekly wage inclusive of regular overtime compensation for a workweek in excess of 40 hours. *Adams v. Dep't of Juvenile Justice of City of New York*, 143 F.3d 61, 67 (2d Cir. 1998) (quoting *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 202 (1947)). However, courts in this Circuit have consistently held that such an arrangement only properly compensates an employee for owed overtime to the extent that there is an "explicit agreement" between the employer and employee establishing that both understand the weekly salary to include compensation for overtime hours at the premium rate. *See Guallpa v. N.Y. Pro Signs Inc.,* No. 11-CV-3133 (LGS) (FM), 2014 WL 2200393, at *3 (S.D.N.Y. May 27, 2014), *adopted by Guallpa v. NY Pro Signs Inc.*, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014) (collecting cases). Thus, "[t]here is a rebuttable presumption that a weekly salary covers 40 hours; the employer can rebut the presumption by showing an employer-employee agreement that the salary covers a different number of hours." *Giles v. City of New York,* 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999); *accord Solis v. Cindy's Total Care, Inc.*, No. 10-CV-7242 (PAE), 2012 WL 28141, at *19 (S.D.N.Y. Jan. 5, 2012).

In this case, Defendants have not rebutted the presumption that Plaintiff's fixed biweekly salary compensated him for 40 hours of work per week at his regular rate of pay. Ms. Lin testified that when she hired Mr. Ramirez, she discussed the number of hours he would be working and how much he would be paid, stating that she "talked to him about . . . overtime." Lin: 82:4-23. She also seemed to suggest that she intended the biweekly amount to compensate Plaintiff for overtime hours at the premium rate. Lin: 86:14-18; 102:16-18. Mr. Ramirez denies that Ms. Lin ever discussed his overtime rate of pay with him at all. Ramirez: 62:25-63:2.

The Court need not resolve this discrepancy between the witnesses' testimony. Even assuming that Ms. Lin "talked to" Mr. Ramirez about overtime and herself intended for the fixed

salary to include overtime compensation, this falls well short of establishing that there was an explicit agreement that the fixed amount of Mr. Ramirez's wages would include compensation at the premium rate for the overtime hours that he worked. Defendants did not produce any evidence that such an arrangement was expressed and agreed upon. The Court concludes that the fixed amount Plaintiff was paid biweekly was compensation only for 80 hours of work (40 hours per week) at his regular rate of pay. By failing to pay Plaintiff the premium rate for any overtime hour he worked, Defendants violated 12 N.Y.C.R.R. § 146.1-4.

### Wage Notice and Statements

N.Y. Lab. Law § 195(1) and (3) require employers to provide employees a notice of their wages upon hiring and statements of wages with each payment of wages, respectively. Defendants provided Plaintiff with neither. As such, Defendants violated these provisions of the New York Labor Law.

### E. Damages

#### Unpaid Overtime Wages and Liquidated Damages

Pursuant to N.Y. Lab. Law § 198(1-a):

> [i]n any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

Accordingly, the Court will award Plaintiff unpaid overtime wages.

The Court will also award Plaintiff liquidated damages pursuant to the statute. Defendants have not proved a good faith basis for their failure to pay Plaintiff overtime, and indeed showed little regard for their obligation to do so. As the Court has already discussed, Defendants kept minimal and wholly unreliable records related to Mr. Ramirez's employment, demonstrating a lack

of concern for payment of his wages in accordance with the law. Ms. Lin testified only to minimal efforts to ensure compliance with wage and hour laws and had difficulty articulating even the very basic requirements of such laws. Whether or not this evidence demonstrates malicious intent on the part of Defendants, it certainly does not establish a good faith basis for believing that these underpayments complied with the NYLL.

The Court thus finds that Plaintiff is entitled to (i) unpaid overtime wages and (ii) liquidated damages equal to the amount of those wages. The chart below records the Court's calculation of these damages:

| Period | Number of Biweekly Periods | Biweekly Rate of Pay[5] | Hourly Rate of Pay[6] | Hourly Rate of Overtime Pay[7] | Amount of Overtime Pay Owed[8] |
|---|---|---|---|---|---|
| 8/1/2012 – 12/31/2012 | 10 | $1100 | $13.75 | $20.63 | $9693.75 |
| 1/1/2013 – 12/31/2013 | 26 | $1150 | $14.38 | $21.56 | $26,349.37 |
| 1/1/2014 – 12/31/2014 | 26 | $1200 | $15 | $22.50 | $27,495 |
| 1/1/2015 – 12/31/2015 | 26 | $1250 | $15.63 | $23.44 | $28,640.63 |
| 1/1/2016 – 10/12/2017 | 44.8 | $1300 | $16.25 | $24.38 | $51,324 |
| TOTAL | | | | | $143,502.75 |

---

[5] Ramirez: 62:13-21.
[6] The biweekly rate divided by 80.
[7] The hourly rate times 1.5.
[8] The hourly rate of overtime pay times 47 (the number of overtime hours Mr. Ramirez worked in each biweekly period) times the number of biweekly periods in each row.

| | | | | | |
|---|---|---|---|---|---|
| **PLUS LIQUIDATED DAMAGES** | | | | | $287,005.50 |

**Prejudgment Interest**

Plaintiff also seeks prejudgment interest. Pl.'s Prop. Findings ¶ 55(e). Under the NYLL, a prevailing plaintiff is entitled both to liquidated damages in an amount equal to the unpaid wages *and* prejudgment interest on the unpaid wages.[9] *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14-CV-7850 (VEC) (DF), 2016 WL 8650464, at *11 (S.D.N.Y. Nov. 7, 2016) (citing N.Y. Lab. Law 198(1-a)), *adopted by* 2017 WL 1194682 (S.D.N.Y. Mar. 30, 2017). Interest is to be calculated from a single reasonable intermediate date at the statutory rate of 9% annually until the date of the entry of judgment. *Hernandez v. Jrpac Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493, at *35-36 (S.D.N.Y. June 9, 2016) (citing N.Y. C.P.L.R. §§ 5001(b), 5004). Neither Plaintiff nor Defendants have proposed a single reasonable intermediate date in their post-trial briefing. The Court finds that April 7, 2015, the date by which roughly half of the unpaid wages to which Plaintiff is entitled had accrued, is a single reasonable intermediate date. Therefore, prejudgment interest on Plaintiff's unpaid wages (totaling $143,502.75) calculated at an annual rate of 9% from April 7, 2015 until the date judgment is entered shall be awarded to Plaintiff, in addition to the other damages described herein.

**Wage Notice and Statements**

In addition, N.Y. Lab. Law §§ 198(1-b) and (1-d) each provide for an award of $5000 in statutory damages to an employee where the employer failed to provide a wage notice or wage

---

[9] Prejudgment interest on the liquidated damages themselves is not available. *Mejia v. East Manor USA Inc.*, No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *adopted by* 2013 WL 2152176 (May 17, 2013).

statements pursuant to N.Y. Lab. Law §§ 195(1) and (3). The Court awards Plaintiff an additional amount of $10,000 for these violations.

**Attorney's Fees, Paralegal's Fees, and Costs**

Finally, Plaintiff requests that the Court award attorney's and paralegal's fees and costs. Pl.'s Prop. Findings at 7-9. The NYLL provides for the recovery of such expenses in the event of successful wage protection claims. *See* N.Y. Lab. Law § 198(4).

The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged. *See generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983). District courts have broad discretion in determining reasonable attorney's fees. *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). The standard method for determining the amount of attorney's fees involves calculation of the "lodestar" figure. *See, e.g., Blanchard v. Bergeron,* 489 U.S. 87, 87 (1989). Under the lodestar approach, "the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992); *see also Cablevision Sys. New York City Corp. v. Lokshin,* 980 F. Supp. 107, 115 (E.D.N.Y. 1997) (citing *Hensley,* 461 U.S. at 434). Requests for attorney's fees (and paralegal's fees) in this Circuit must be accompanied by contemporaneous time records that show, for each attorney, the date the work was done, "the hours expended, and the nature of the work done." *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc.,* No. 07-CV-2568 (JG), 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012) (quoting *Carey,* 711 F.2d at 1148); *see also Scott v. City of N.Y.,* 643 F.3d 56, 58–59 (2d Cir. 2011).

In support of his claim for attorney's and paralegal's fees, Plaintiff submits a billing statement reflecting the number of hours expended by his attorney and paralegals, a description of

each matter, the date of each matter, the hourly rate, and the total fee. Pl.'s Ex. C, ECF No. 42-2 at 20-22. Plaintiff also submits the declaration of his attorney in support of his request. *See* Aronauer Decl., ECF No. 42-1. These documents are sufficient to allow the Court to determine a proper award of attorney's fees. The Court will turn to the reasonable hourly rate and reasonable number of hours worked for such fees, respectively.

*Reasonable Rate*

Plaintiff seeks attorney's fees at an hourly rate of $350. Aronauer Decl. ¶ 16; Pl.'s Prop. Findings ¶ 50. Mr. Aronauer's declaration indicates that he received his J.D. in 2005; has roughly six years of experience litigating primarily wage and hour cases; and has handled roughly 100 FLSA and NYLL cases. Aronauer Decl. ¶¶ 10-14. By the standards of the Eastern District of New York, this rate is somewhat high for an attorney of Mr. Aronauer's experience. Although Plaintiff claims that "Courts in this District have determined that a fee ranging from $250 to $450 per hour is generally appropriate for experienced civil rights and employment law litigators," Pl.'s Prop. Findings ¶ 52, Plaintiff only cites cases from the Southern District of New York. An hourly rate of $350 has been found to represent the upper limit of attorney's fees awarded in our District for wage and hour cases. *See Encalada v. Baybridge Enterprises Ltd.*, 612 Fed. Appx. 54 (2d Cir. 2015) (affirming district court decision that "survey[ed] attorneys' fees decisions in [the Eastern District of New York in] contested FLSA fee applications . . . and found that the highest litigated reasonable rate in a simple FLSA case is $350"); *see also Lee v. 75 Oscar Nails & Spa, Corp.*, No. 15-CV-2064 (JMA) (AYS), 2018 WL 4623018, at *3 (E.D.N.Y. Sept. 26, 2018) (awarding an hourly rate of $350 to sole practitioner who had litigated wage and hour cases since 1992).

The Court finds that $300 per hour is a reasonable rate for Plaintiff's attorney. *See Scott v. BK Beasts LLC*, No. 17-CV-699 (RRM) (PK), 2018 WL 2088280, at *2 (E.D.N.Y. May 3, 2018)

("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300–$450 for partners, $200–$325 for senior associates, $100–$200 for junior associates, and $60–$80 for legal support staff.") (citation omitted); *Remache v. Mac Hudson Grp.*, No. 14-CV-3118 (AMD) (RML), 2018 WL 4573072, at *19 (E.D.N.Y. Sept. 7, 2018), *adopted by* 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018) (setting an hourly rate of "$275 for associates and senior associates with 4 to 9 years of experience").

Additionally, the Court finds that Plaintiff's requested rate of $125 per hour for paralegals is unreasonable. Paralegals and preadmission associates typically receive an hourly rate of $75 in this District in wage and hour cases. *Burns v. Nurnberger Corp.*, No. 16-CV-6251 (WFK) (ST), 2018 WL 5927575, at *12 (E.D.N.Y. Sept. 17, 2018), *adopted sub nom.*, *Burns v. Kelly Enterprises of Staten Island, LLC*, 2018 WL 5928106 (E.D.N.Y. Nov. 13, 2018) (collecting cases). The Court will reduce the rate for Plaintiff's paralegals to $75 per hour.

*Reasonable Hours*

The Court has reviewed the billing records submitted by Plaintiff. Generally, the number of hours billed for the described matters is reasonable. However, courts in this Circuit reduce the hourly rate for each hour of travel by 50%. *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 139 (2d Cir. 2008). Plaintiff's attorney and paralegals have block-billed for travel with other work that is compensable at the regular rate. *See* ECF No. 42-2 at 21 (two entries dated 8/24/18, entry dated 9/9/18, and entry dated 11/5/18). Using its best estimate, the Court will reduce 3 hours of attorney time and 1 hour of paralegal time by 50% to account for travel, effectively removing 1.5 hours of attorney time and .5 hours of paralegal time from the overall number of hours. The Court also declines to award fees related to Plaintiff's now-withdrawn motion for default judgment against Larry Zhou (entry dated 10/26/18), which accounts for .35 paralegal hours.

As such, the Court awards Plaintiff attorney's fees of $11,670 ((40.4-1.5) * $300) and paralegal's fees of $1,557.75 ((21.62-0.85) * $75), for a total of $13,227.75.

*Costs*

Plaintiff requests litigation costs in the amount of $1,440.38, consisting of a filing fee of $400, the fee for Mr. Ramirez's trial interpreter of $700, and the fee for the trial transcript of $340.38. Aronauer Decl. at 3-4. The Court finds that these costs are reasonable and will award them to Plaintiff.

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has proved by a preponderance of the evidence that Defendants Roka Japanese Food, Inc. and Mei Lin violated the overtime and record-keeping provisions of the New York Labor Law. Plaintiff is awarded damages, fees, and costs, against Defendants Roka Japanese Food, Inc. and Mei Lin, jointly and severally, in the following amounts:

a. $143,502.75 in unpaid wages;
b. $143,502.75 in liquidated damages;
c. Prejudgment interest on his unpaid wages of $143,502.75 at an annual rate of 9%, calculated from April 7, 2015 until the date judgment is entered;
d. $13,227.75 in attorney's fees; and
e. $1,440.38 in litigation costs.

Judgment shall be entered accordingly.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　Steven L. Tiscione
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge
　　　　　　　　　　　　　　　　　　　　　Eastern District of New York

Dated: Brooklyn, New York
　　　　June 5, 2019